| | | |
|---|---|---|
| **DOCKET NO. #FA 08 4018126 S** | : | **SUPERIOR COURT** |
| **STEPHEN CONLON, of** **Bristol, Connecticut** | : | **J.D. OF NEW BRITAIN** |
| **VS.** | : | **AT NEW BRITAIN** |
| **LAURA MIELE-CONLON, of** **Bristol, Connecticut** | : | **OCTOBER 30, 2008** |

## STIPULATION

This action, by Complaint of Plaintiff (hereinafter Husband) claiming a dissolution of marriage, came to the court on July 22, 2008.

The parties hereby stipulate to the following:

1.   Husband (plaintiff) and Wife (defendant), whose maiden name was Laura Miele, married on April 25, 2006 in Key West, Florida.

2.   One of the parties has resided continuously in this state for the 12 months preceding the date of the Complaint.

3.   One child has been born to Wife since the date of the marriage: M█████ C█████, born ████████, 2007. No other children have been born to Wife since the date of the marriage.

4.   Neither the State of Connecticut nor any town in Connecticut is contributing to the support or maintenance of either party.

FILED IN COURT ON
10/30/08 m Gostkowski
**MARY GOSTKOWSKI**

DLN: 2/27/2020 08:45.94539.60201.060227202005793.001.001

**WHEREAS**, in consequences of various unfortunate disputes and differences the parties are about to engage in litigation concerning the dissolution of their marriage and that the parties are now and have been for some time living separate and apart and intend to continue to live separate and apart; and

**WHEREAS**, each party agrees that the financial condition of the other has been fully disclosed to the other to the satisfaction of each; and

**WHEREAS**, the parties desire to confirm the terms and conditions of their separation and make arrangements in connection with all property rights and obligations resulting from the marriage relationship, including without limitation, questions of alimony, division of real and personal property, and such other rights and obligations as may arise from the marital relationship.  In determining the rights and duties of the parties reference has and is made to the criteria enunciated in the respective statutes serving as a guide for such, being without limitation Sections 46(b)-81 and 46(b)-82 of the Connecticut General Statutes, as amended.

-2-

LEVY & DRONEY, P.C. • LAWYERS AND COUNSELORS AT LAW

PONDVIEW CORPORATE CENTER • 74 BATTERSON PARK ROAD • P.O. BOX 887 • FARMINGTON, CT 06034-0887 • (860) 676-3000 • JURIS NO. 62036

NOW, **THEREFORE**, the parties agree and stipulate, subject to the Courts approval, as follows:

1.    **IRRETRIEVABLE BREAKDOWN**: The marriage of the parties has broken down irretrievably, and there is no prospect for reconciliation. The parties further agree that they consider it counterproductive and/or inappropriate to articulate blame or fault in this Agreement and mutually request that the Court consider their respective wishes during any hearing regarding the dissolution of their marriage.

2.    **CONSIDERATION AND PURPOSE OF AGREEMENT**: The consideration for this Agreement is the mutual promises and agreements herein contained. This Agreement has been entered into between the parties for the purposes of defining their respective rights and obligations and they each further agree that if and in the event that a final decree of dissolution of their marriage shall be entered in any action between them, this Agreement shall be submitted to the court having jurisdiction for approval thereof, and that neither party hereto will in any such action for dissolution request of the court any provision for herself or for himself contrary to the provisions of this Agreement.

3.    **SEPARATION**: It shall be lawful for the Wife and the Husband at all times hereafter to live separate and apart from each other and each shall hereafter be entirely

—3—

free from any marital control of the other party, as if they were unmarried. Neither party shall

molest the other nor interfere with the peace and comfort of the other nor compel nor seek to

compel the other to associate, cohabit or deal with her or with him. Each party hereto may

reside at such place as she or he may deem fit and may engage under her or his name or

otherwise in any business or profession and affiliate and assist in any movement, commercial,

political, literary, or otherwise, without interference directly or indirectly by the other party.

   **4.**      **MUTUAL RELEASE**: Subject to the provisions of this Agreement,

each party has released and discharged and by this Agreement does for herself and for himself,

and her or his heirs, legal representatives, executors, administrators and assigns, release and

forever discharge the other of and from all causes of action, claims, rights or demands

whatsoever, in law or equity, which either of the parties ever had or now has against the other,

except any and all cause or causes of action for divorce or dissolution.

   **5.**      **WAIVER OF CLAIMS AGAINST ESTATE**: Except as may be herein

otherwise provided, each party hereto may dispose of her or his property in any way, and each

party hereby waives and relinquishes any and all rights she or he may now have or hereafter

acquire, under the present or future laws of any jurisdiction, to share in the property of the

estate of the other as a result of the marital relationship, including without limitation, dower,

—4—

JLN: 2/27/2020 08:45.94539.60201.060227202000S793.001.001

courtesy, statutory allowance, homestead rights, right to take in intestacy, right to take against

the will of the other, and right to act as administrator or executor of the other, and each party

shall execute, acknowledge and deliver any and all instruments which may be necessary or

advisable to carry into effect this mutual waiver and relinquishment of all such interest, rights

and claims.  Either party reserves the right to make a voluntary testamentary disposition of a

portion or all of her or his estate to the other by instrument executed after this date.

      6.    **ACCEPTANCE BY PARTIES**: The parties acknowledge that the

provisions of this Agreement for support and maintenance are fair, reasonable, adequate and

satisfactory, and each party discharges the other from any claims and demands except as

provided in this Agreement.

      7.    **VOLUNTARY EXECUTION**: The provisions of this Agreement and

their legal effect have been ready in full by the Wife and the Husband, and each party

acknowledges that the Agreement is fair and equitable, that it is being entered into voluntarily,

and that it is not the result of any duress or undue influence.  Each party acknowledges that she

or he has been fully furnished with sufficient information relating to the financial affairs of the

other, which has been requested either by her or him or by her or his respective counsel and

further acknowledges that she or he has made a complete disclosure of her or his relevant

—5—

LEVY & DRONEY, P.C. • LAWYERS AND COUNSELORS AT LAW

PONDVIEW CORPORATE CENTER • 74 BATTERSON PARK ROAD • P.O. BOX 887 • FARMINGTON, CT 06034-0887 • (860) 676-3000 • JURIS NO. 62938

financial affairs.

8.      **JOINT CUSTODY**:

The Husband and Wife shall have joint legal custody of the minor

child, M███████n, whose primary residence shall be with the Wife.

(a)     **Definition of Joint Custody**.

It is the intention of the parents, in agreeing to joint custody, that each of

them shall continue having a role in providing a sound moral, social, economic and

educational environment for M███████ and continue that parental support which they have

received to date.  In accepting this joint legal custodial arrangements, the parties shall exert

their best efforts to work cooperatively in developing future plans consistent with the best

interests of M███████ and in amicably resolving such disputes as may arise.  Each party wishes

to express their intention to use their best efforts to foster and continue M███████

relationships with both parents and with their extended families.

b)      **Decision Making**.

The Husband and Wife agree that they will discuss and confer

with reference to matters of policy involving M███████ as to such topics as health and medical

care, religion, education, camps, private schools and colleges, and the parties agree that they

—6—

will attempt to adopt a harmonious policy best suited to the interests of M███████.  Routine

day to day decisions shall be made by each parent during the times when M██████ is with him

or her.

All major decisions affecting M█████n shall be made by the parties

jointly, with each parent to have an equal voice in such decisions.  In addition, the parties shall

confer jointly from time to time whenever differences arise or decisions are to be made or

changes brought about affecting M██████s life with respect to such non-routine matters as

her education, financial matters, religious training, illness and operations, and other matters of

similar importance.  In accepting the broad grant of privileges conferred by this joint custodial

arrangement, the parties specifically recognize that these powers shall not be exercised for the

purpose of frustrating, denying or controlling in any manner the lifestyle of the other parent.

The parties shall exert their best efforts to work cooperatively in developing future plans

consistent with the best interest of M██████ and in amicably resolving such disputes as may

arise.

(c)     **Emergency Decisions**.

It is understood that some decisions must be made on an emergency or

urgent basis and in such an event, each of the parties acknowledges full confidence in the

–7–

others ability to make a unilateral decision for M█████s welfare, which otherwise would be a joint decision of the parties. When a unilateral decision on a significant matter is made, the party making that decision shall promptly notify the other party.

   (d)   **Positive Relationships**.

   Each parent shall use reasonable efforts to promote a positive relationship between M█████ and the other parent. Neither parent shall undermine M█████s relationship with the other parent, nor shall either party permit third persons to undermine M█████ relationship with the other parent.

   (e)   **Access**.

   1.   **Parenting Access**

   Initially, there shall be no overnights for two weeks away from the Defendant Mother, unless agreed upon by the parties. The parties believe they will be able to work out issues of access as M█████ grows up. Plaintiff father shall have reasonable access to M█████ at Defendant Mother's home. At such time as the parties are residing in separate homes, they shall equally share the transportation for parenting time with M█████ The parents presently intend to live in close proximity to each other. The parties believe that they will be able to work out holiday parenting time. However, they agree to the following

—8—

specific schedule as the basis for agreements in the future:

          1(a).    **Christmas 2008 & 2009**.  Father shall visit at Mother's home with Mother present starting in the morning hours.  In subsequent years, the parties shall work out details themselves.

        3.     **Miscellaneous**

        (a)    The parties shall exchange all school notices, report cards, school pictures, extracurricular schedules, physician notes, etc. within 48 hours of receipt, or at the next visit.

        (b)    Each parent shall refrain from scheduling events for M▮ during the other parent's parenting time.

        (c)    Each parent shall keep the other informed as to all physician/dental/orthodontist appointments and shall provide the other with notice within 24 hours of scheduling routine appointments.

        If either parent must bring M▮ for emergency treatment, then that parent shall notify the other parent immediately, or as soon as possible after arriving at the Emergency Room or other medical facility.

        (d)    The parties shall exchange home telephone numbers,

LEVY & DRONEY, P.C. • LAWYERS AND COUNSELORS AT LAW
PONDVIEW CORPORATE CENTER • 74 BATTERSON PARK ROAD • P.O. BOX 887 • FARMINGTON, CT 06034-0887 • (860) 676-3000 • JURIS NO. 62938

DLN: 2/27/2020 08:45.94539.60201.0602272020005793.001.001

cell phone and pager numbers, fax numbers, residential addresses and work phone numbers, and shall continue to do so within 24 hours of any change.

    (e)    Each parent shall use their best discretion regarding the introduction of new adults into the lives of M█████, particularly new romantic interests.

    (f)    <u>Relocation</u>. Each party shall give, by certified mail, ninety days notice to the other before any relocation beyond 50 miles of each other unless previously discussed by both parties.

## 9.    **PROPERTY SETTLEMENT**

### 1.    **MARITAL HOME**

    The parties have listed the marital home for sale, and believe they can agree upon all aspects of a sale, including adjustment of the sales price, if necessary. The parties shall equally divide any net profit from the sale, or equally pay any shortfall. The parties intend to pay off the following joint debts, prior to the division of any net profits:

1.    Second Mortgage – Approximately $19,000.00

2.    AMEX – Approximately $4,400.00

—10—

DLN: 2/27/2020 08:45.94539.60201.0602272020005793.001.001

3.   Wells Fargo Credit Card – Approximately $2,400.00

4.   Wells Fargo Line of Credit – Approximately $2,300.00

5.   Home Depot – Approximately $1,900.00

6.   Sears – Approximately $4,500.00

7.   BJ's Visa – Approximately $1,500.00

8.   Exxon – Approximately $1,400.00

The parties intend to both remain in residence until the marital home is sold. They shall continue to share the payment of bills as they have historically done. The parties shall maintain the joint Bank of America account for this purpose. Husband shall pay Wife an additional $50.00 per month toward household expenses. Said payments shall not continue beyond two (2) years from the date of the entering of this judgment or shall cease upon the sale of the Wife's home in Arizona, whichever first occurs. Wife must notify Husband upon the sale of the Arizona home.

10.   **CHILD SUPPORT**

(a)   Weekly Support & Unreimbursed Expenses

The Husband shall pay *Guideline* child support to the Wife in the amount of $116.00 per week. Payment shall be by check or cash. The parties shall divide

–11–

LEVY & DRONEY, P.C. · LAWYERS AND COUNSELORS AT LAW
PONDVIEW CORPORATE CENTER · 74 BATTERSON PARK ROAD · P.O. BOX 887 · FARMINGTON, CT 06034-0887 · (860) 676-3000 · JURIS NO. 62938

all uninsured or unreimbursed medical and dental expenses, including but not limited to surgical, hospital, psychiatric, orthodontic and prescriptions incurred by or on behalf of M█████, with Husband paying 50% and the Wife paying 50%. The unreimbursed medical expenses, etcetera, will be submitted to Husband quarterly and Husband will pay the amount due, in full, within fifteen (15) days of receipt. Husband's income is to be considered $38,000.00 and Wife's income is to be considered $44,400.00. Husband's disability income shall not be considered for child support purposes.

     (b)    <u>Daycare Expenses</u>

Daycare expenses shall be paid at the same 50% (Husband)/50% (Wife) rate.

     (c)    <u>Extracurricular Activities</u>

Any extracurricular activities, religious school, including camps, after-school programs, musical lessons, etc. shall be split 50%/50% between the parties. This provision shall be modifiable upon a showing of a substantial change in circumstances.

11.    **STATE AND FEDERAL TAX EXEMPTIONS**

The parties shall alternate M█████ for tax exemption purposes, and

-12-

DLN: 2/27/2020 08:45.94539.60201.0602272020005793.001.001

complete any necessary IRS forms to accomplish this..

### 12.   HEALTH INSURANCE

The Husband shall provide health insurance as available through his

employer for the benefit of M▮▮▮▮

### 13.   LIFE INSURANCE

*Plaintiff - $250,000 presently for m▮▮▮▮▮*
*Defendant - 325,000 presently for m▮▮▮▮▮*

Each party shall maintain the life insurance that is presently in place naming

M▮▮▮▮ as irrevocable beneficiary with the other parent as the trustee, until such time as

M▮▮▮▮ has reached the age of twenty-five, at which time the remaining insurance

proceeds shall belong solely to M▮▮▮▮. Each party shall provide proof to the other that

said life insurance is in force, upon request.

### 14.   PRIVATE SCHOOL & POST-HIGH SCHOOL EDUCATION

If the parties agree to send M▮▮▮▮ to private elementary, middle or high

school, the parties shall share the cost equally.

The Court will retain jurisdiction regarding the college education expense

issue in the future, if deemed necessary, upon motion or petition of either parent. The

Court may issue an educational support order at a later date, pursuant to Public Act 02-128.

−13−

15.    **ALIMONY**

Neither party shall pay alimony to the other and each understands that they are forever barred from ever seeking alimony.

16.    **PERSONAL PROPERTY**

(a)    The Wife shall keep her motor vehicle (Yukon), and the Husband shall keep his vehicle (Scion).

(b)    The bank accounts have all been divided to the parties' satisfaction.

(c)    The Wife shall keep assets which are in her name and listed on her Financial Affidavit and Husband shall keep assets which are in his name and listed on his Financial Affidavit.

(d)    Each party shall be responsible for his or her own debts listed on his or her Financial Affidavit.

(e)    The parties shall negotiate issues of personal property.  Marital items not agreed upon shall be sold and the proceeds equally divided.

(f)    Pets.  Husband shall retain ownership of both dogs.

17.    **WAIVERS**: The Wife waives any claim she may have as to any assets of the Husband not specifically mentioned herein which appear on his Financial Affidavit filed at the

—14—

time of the dissolution. The Husband waives any claim he may have as to any assets of the Wife not specifically mentioned herein which appear on her Financial Affidavit filed at the time of the dissolution. However, neither party shall waive any claim to any undisclosed assets in excess of $5,000.00. In the event that it becomes necessary for either party to reopen the Judgment based on the discovery of such assets, the moving party shall be entitled to payment for all reasonable and necessary attorney's fees necessitated by such proceeding and shall receive fifty percent (50%) of the value of any such undisclosed assets.

18. **DISCOVERY**:

(a)     The parties understand and agree that they have the right to have accountants, appraisers or others investigate, appraise or evaluate the others personal, business and/or other property. Each party has waived these rights and agrees not to take any further steps to have accountants, appraisers or others investigate, appraise or evaluate the other's personal, business and/or other property. These actions will not be taken by the parties themselves or through others, in connection with discovery, inspection, investigation, appraisal or evaluation of the other's personal, business and/or other property.

(b)     Each party hereby warrants to the other that he or she is not now possessed of or entitled to any property of any kind or description which has not been covered

—15—

by this Agreement or disclosed in their Financial Affidavits. Any property held contrary to this warranty shall be divided equally. Each party further warrants that she or he has not made any gift or transfer, for less than adequate consideration, of any property of the parties without the knowledge of the other or within the past ordinary circumstances of their marriage. If it shall hereafter be determined that a party to this Agreement has made any such gift or transfer contrary to this warranty, the party making such transfer shall pay to the other party a sum equal to fifty percent (50%) of the fair market value of the property so transferred, as well as the costs and fees incurred in establishing same. The fair market value shall be determined as of the date of this Agreement.

(c)     The parties acknowledge that they have been separately advised by their respective attorneys that there may be certain tax consequences pertaining to this Agreement, that neither attorney has furnished tax advice with respect to this Agreement, that each party has been directed and advised to obtain independent tax advice from qualified tax accountants or tax counsel prior to signing this Agreement and that they have had the opportunity to do so and have availed themselves of that opportunity by obtaining said tax advice.

**19.     PRESERVATION OF RECORDS**: For three years hereafter, each party shall preserve all records in that party's possession pertaining to joint federal and income tax returns

–16–

DLN: 2/27/2020 08:45.94539.60201.0602272020005793.001.001

filed by the parties for all years 2005 through 2007, and such records shall be available to both parties in the event of a tax audit or other event or development relating to those tax returns.

20.   **DOCUMENTS**: The parties shall exchange with each other any and all documents necessary to calculate any present or future capital gains or any other taxes on properties transferred or distributed to them hereunder and will produce same within thirty days of request for same.

21.   **EXECUTION OF NECESSARY INSTRUMENTS**: The parties shall hereafter execute all instruments necessary to carry out the terms of this Agreement within thirty days of a reasonable request to do so.

22.   **INCORPORATION DECREE**: If a decree dissolving the marriage of the parties shall be made and entered, this Agreement shall be submitted to the court for approval, and if approved and adopted by the court, shall be embodied in such decree to perform and carry out all of the terms and provisions hereof; but this Agreement shall nevertheless survive any such decree.

23.   **SEVERABILITY**: In the event that any term, provision, and/or paragraph of this Agreement is hereafter held to be invalid or unenforceable, said term, provision, and/or paragraph shall be separated from this Agreement, and the remainder of this Agreement shall

–17–

continue and remain in full force and effect.

24. **NON-WAIVER AND FORMALITY FOR MODIFICATION**.   No modification or waiver of any of the terms of this Agreement shall be valid unless in writing and executed with the same formality as this Agreement. No waiver of any breach hereof shall be deemed a waiver of any subsequent breach of the same of similar nature.

25. **MISCELLANEOUS**: All indemnification agreements as contained in this Agreement are in the nature of maintenance and support and shall be non-dischargeable in bankruptcy.

26. **ENTIRE AGREEMENT**: There are no representations, warranties, conditions, promises, or undertakings other than those set forth in this Agreement, which contains the entire agreement of the parties.

27. **EXECUTION**: This Agreement shall be executed in quadruplicate, each of which so executed shall be deemed an original and shall constitute one and the same Agreement.

28. **LEGAL EXPENSES RELATED TO ENFORCEMENT**: If either party seeks to enforce this Agreement against the other for breach or default of any of its terms, the breaching or defaulting party shall bear the entire legal expense of the enforcement of this

—18—

Agreement.

29. **CHOICE OF LAW**: All matters affecting the interception of any terms, provisions, and/or paragraphs of this Agreement shall be governed by the laws of the State of Connecticut.

30. **REPRESENTATION BY COUNSEL**: At all times herein, the Husband has been represented by himself in connection with the negotiations and drafting of this Agreement, has had all terms and conditions fully explained to his satisfaction, has been fully advised by personal and business accountants of the tax consequences of the transfers under this Agreement as well as the effect of removing any assets transferred hereunder; has had an opportunity to request and review all financial material related to Wife's assets, income and liabilities and have any questions regarding same answered to his full satisfaction, and Husband acknowledges that he is satisfied.

The Wife has been represented by Attorney Robert B. Katz of Levy & Droney, P.C., 74 Batterson Park Road, Farmington, Connecticut in connection with the negotiations and drafting of this Agreement, has had all terms and conditions explained to her satisfaction, has been fully advised by personal and business accountants of the tax consequences of the transfers under this Agreement, and has had an opportunity to request and review all financial

—19—

JLN: 2/27/2020 08:45.94539.60201.0602272020005793:001.001

material related to Husband's assets, income and liabilities and have any questions regarding same answered to her full satisfaction, and Wife acknowledges that she is satisfied with the advice and representation of her counsel.

31.     **CLAIM AGAINST ESTATE**:  If Wife survives Husband and for any reason does not receive the full benefit of the terms of this Agreement, she shall have a preferred creditor's claim against the estate of Husband for the full amount of any sums due payable to her.  If Husband survives Wife and for any reason does not receive the full benefit of the terms of this Agreement, he shall have a preferred creditor's claim against the estate of Wife for the full amount of any sums due payable to him.

32.     The Defendant's Wife's last name shall be restored to Miele.

LEVY & DRONEY, P.C. • LAWYERS AND COUNSELORS AT LAW
BONDVIEW CORPORATE CENTER • 74 BATTERSON PARK ROAD • P.O. BOX 887 • FARMINGTON, CT 06034-0887 • (860) 676-3000 • JURIS NO. 62938

DLN: 2/27/2020 08:45.94539.60201.06027272020005793.001.001

**IN WITNESS WHEREOF,** the parties hereto have hereunto set their hands and seals the date and year first above written.

WITNESSES,                    PLAINTIFF,



_____    _____
                           STEPHEN CONLON


                           DEFENDANT,



_____    _____
                           LAURA MIELE-CONLON


–21–

DLN: 2/27/2020 08:45.94539.60201.0602272020005793.001.001

| | | |
|---|---|---|
| Docket No.: FA08 401 81 26 S | : | SUPERIOR COURT |
| STEPHEN CONLON | : | JUDICIAL DISTRICT<br>of NEW BRITAIN |
| v. | : | |
| LAURA MIELE-CONLON | : | MAY 14, 2010 |

## **STIPULATION, Post Judgment**

In light of the Court's (Prestley, J.) decision not to grant the Plaintiff's Ex Parte Motion for the Return of the Minor Child, and the still-pending Motion for Modification filed by Plaintiff, the parties agree to the following terms as interim orders:

1.  Father shall have parenting time with the minor child, M████ C████ dob ██07, as follows:
    a.  Every other weekend from Thursday at 7:00pm until Monday at 7:00pm.
    b.  When the child is with Mother, Father can speak with the minor child via webcam calls with Skype with the child three (3) times per week. The parties shall work out the specific days. If the parties cannot resolve the three days between themselves, the default times for the Skype webcam calls shall be every Tuesday, Thursday, and Saturday at 6:00pm. Additional times for Skype calls can be arranged between the parties.
    c.  Mother shall be able to use Skype to speak with the child on the Saturday morning at 9:00am when the child is with Father. Additional times for Skype calls can be arranged between the parties.

2.  To effectuate the alternate weekend parenting time, the parties shall meet at a mid-way point. WILL BE
    a.  The mid-way point ~~can be one of two places — the parties to e-mail each other to confirm the exact site for the transition.~~
    b.  ~~One mid-way point shall be near the intersection of I-287 and the Garden State Parkway — the exact site to be determined among counsel and the parties. The second mid-way point to be~~ either the maternal or paternal grandmother's residence(s) in Queens, New York.

3.  The parties and counsel are to re-appear in court on Tuesday, June 22, 2010.

FILED IN COURT ON
05/14/10 WR

DLN: 2/27/2020 08:45.94539.60201.0602272020005793.001.001

Stephen Conlon

Laura Miele

Robert Zaslow
Counsel for Plaintiff

Margaret Hayes
Counsel for Defendant

Approved and So Ordered,

5-14-10

JUDGE/ Clerk        date

Docket No.: FA08 401 81 26 S : **S**UPERIOR COURT

STEPHEN CONLON : **JU**DICIAL DISTRICT
**OF** NEW BRITAIN

v. :

LAURA MIELE-CONLON : **DE**CEMBER 2, 2010

## AGREEMENT re: HOLIDAYS and VACATIONS

A. The parties agree to the following holiday and vacation schedule:

1. Easter and Thanksgiving.
   a. These holidays will run from 8:00pm the night before the holiday through 8:00pm on the holiday.
   b. Mother will have Easter in odd years and Thanksgiving in even years.
   c. Father will have Easter in even years and Thanksgiving in odd years.

2. For Christmas/New Year's Holidays
   a. Christmas Eve Day (8:00pm on December 23rd until 11:00am on December 25th) and Christmas Day (11:00am on December 25th until 11:00am on December 26th) shall be annually alternated.
   b. In even years, Mother shall have Christmas Eve Day and Father shall have Christmas Day.
   c. In odd years, Father shall have Christmas Eve Day and Mother shall have Christmas Day.
   d. "Christmas Break" (11:00am on December 26th until January 2nd at 5:00pm) shall be equally divided between the parties. In even years Father shall have the first half of Christmas Break and Mother to have the second half. In odd years Mother to have the first half of Christmas Break and Father to have the second half. The mid-point of the Christmas Break shall be December 29th at 5:00pm.

3. Mother shall always have parenting time on Mother's Day and Father shall always have parenting time on Father's Day – if the parties cannot work out other accommodations to maximize the time on these weekends, the default time shall be from 9:00am to 7:00pm.

FILED IN COURT ON
12.2.2010
JOAN FERRARO, TAC

117

DLN: 2/27/2020 08:45.94539.60201.0602272020005793.001.001

4.  For any vacation involving air travel that either party intends to take with the minor child, that party shall notify the other with a minimum of thirty (30) day advance written notice. Said notice shall include dates of the trip, flight information, and emergency contact numbers if cell phone contact will not be available. All other vacations not involving air travel and which will occur outside the states of New York, Pennsylvania, and Connecticut shall be noticed via e-mail to the other parent fourteen (14) days in advance of said trip.

5.  Holiday/vacation time as detailed herein shall supercede the routine parenting schedule.


Stephen Conlon

Robert D. Zaslow, Esq.
Counsel for Plaintiff

Laura Miele-Conlon

Margaret Hayes, Esq.
Counsel for Defendant


**Approved and So Ordered,**

JUDGE / Clerk          date   12/2/10

DLN: 2/27/2020 08:45.94539.60201.0602272020005793.001.001

**STATE OF CONNECTICUT**
**OFFICE OF THE CHIEF CLERK**
**SUPERIOR COURT, JUDICIAL DISTRICT OF NEW BRITAIN**

# ORDER

| JUDICIAL DISTRICT | COURT LOCATION |
|---|---|
| **NEW BRITAIN** | **20 FRANKLIN SQ., NEW BRITAIN, CT 06051** |
| DOCKET NUMBER<br>**HHBFA084018126S** | NAME OF CASE<br>**CONLON v CONLON** |
| DATE OF HEARING<br>**12/02/2010** | MOTION (if applicable) |

Transfer of the minor child is to take place in Queens, New York on Fridays at 12 pm and on Sundays at 5:30pm. Once the minor child is enrolled in elementary school the time for the transfer of the child shall be 2 hours after school on Fridays in Queens, New York. The return transfer shall take place on Sunday at 5:30pm in Queens, New York.

Parties shall alternate weeks during the child's summer vacation. The week shall begin on Friday at 12 noon and shall conclude 7 days later on Friday at 12 noon
Parties may swap summer weeks if both parties agree.

Should a holiday falls on a Monday, dad shall have the minor child until 4:30pm if it is dad's weekend to have the minor child.
Should a holiday falls on a Monday, mom shall have the minor child until 4:30pm if it is mom's weekend to have the minor child.

Expenses for the minor child's extra curricular activities shall be divided 50/50 between the parties from this day forward. This order shall not be applicable for any extra curricular activities that have already occurred in the summer of 2010.
Skype orders remain in effect.
Proposed Orders date stamped 12/02/2010 is approved.
Motion for Contempt dated 6/8/2010 is denied.

| JUDGE<br>(PINKUS, J.) |
|---|
| CLERK<br>JOAN FERRARO  TAC |

Present in court:    Plaintiff, Plaintiff's Attorney, Defendant, Defendant's Attorney,

118

DLN: 2/27/2020 08:45.94539.60201.0602272020005793.001.001

**STATE OF CONNECTICUT**
**OFFICE OF THE CHIEF CLERK**
**SUPERIOR COURT, JUDICIAL DISTRICT OF NEW BRITAIN**

# ORDER

| JUDICIAL DISTRICT | COURT LOCATION |
|---|---|
| **NEW BRITAIN** | **20 FRANKLIN SQ., NEW BRITAIN, CT 06051** |
| DOCKET NUMBER | NAME OF CASE |
| **HHBFA084018126S** | **CONLON v CONLON** |
| DATE OF HEARING | MOTION (if applicable) |
| **12/02/2010** | |

Transfer of the minor child is to take place in Queens, New York on Fridays at 12 pm and on Sundays at 5:30pm. Once the minor child is enrolled in elementary school the time for the transfer of the child shall be 2 hours after school on Fridays in Queens, New York. The return transfer shall take place on Sunday at 5:30pm in Queens, New York.

Parties shall alternate weeks during the child's summer vacation. The week shall begin on Friday at 12 noon and shall conclude 7 days later on Friday at 12 noon
Parties may swap summer weeks if both parties agree.

Should a holiday falls on a Monday, dad shall have the minor child until 4:30pm if it is dad's weekend to have the minor child.
Should a holiday falls on a Monday, mom shall have the minor child until 4:30pm if it is mom's weekend to have the minor child.

Expenses for the minor child's extra curricular activities shall be divided 50/50 between the parties from this day forward. This order shall not be applicable for any extra curricular activities that have already occurred in the summer of 2010.
Skype orders remain in effect.
Proposed Orders date stamped 12/02/2010 is approved.
Motion for Contempt dated 6/8/2010 is denied.

## Copy of Amended Order has been sent on December 9, 2010 to all appearing parties.

| JUDGE |
|---|
| (PINKUS, J.) |
| CLERK |
| JOAN FERRARO  TAC |

Present in court:    Plaintiff, Plaintiff's Attorney, Defendant, Defendant's Attorney,
Other: _____

119